RUSSELL C. FERICKS [3793]
STEVEN H. BERGMAN [13641]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Plaintiff CirTran Beverage Corp.*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email: russell-fericks@rbmn.com
         steven-bergman@rbmn.com
Telephone:     (801) 531-2000
Facsimile:      (801) 532-5506

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CIRTRAN BEVERAGE CORP., a Utah Corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>PLAYBEV CEE Kft., a Hungarian company, and TAMÁS MODROCZKY, individually,<br><br>        Defendants. | **COMPLAINT FOR BREACH OF CONTACT**<br><br><br>Civil No. 2:11-cv-01122 PMW<br><br>Judge Paul M. Warner |

COMES NOW Plaintiff CirTran Beverage Corp., through counsel Russell C. Fericks and Steven H. Bergman of RICHARDS BRANDT MILLER NELSON, and for its Complaint for Breach of Contract alleges as follows:

## PARTIES

1.        Plaintiff CirTran Beverage Corp. ("CirTran") is a Utah corporation with its principal place of business in West Valley City, Utah.

2.        Defendant PlayBev CEE Kft. is a Hungarian company with its principal place of business in Erd, Hungary.

3.        Defendant Tamás Modroczky is a citizen of the Republic of Hungary who on information and belief lives and/or works in Erd, Hungary.  Mr. Modroczky is or was the managing director of defendant PlayBev CEE.

## JURISDICTION AND VENUE

4.        This Court has personal jurisdiction over defendant PlayBev CEE because PlayBev CEE has sufficient minimum contacts with the State of Utah and because defendant PlayBev CEE submitted to the exclusive personal jurisdiction of courts in the State of Utah in Paragraph 12.8 of the Manufacturing and Distribution Agreement dated as of July 6, 2009, and as amended on May 7, 2010 and March 21, 2011 (the "Distribution Agreement") between PlayBev CEE and CirTran that is at issue in this lawsuit.  A true and correct copy of the Distribution Agreement, including the amendments thereto, is attached to this Complaint as Exhibit A and incorporated by reference in this Complaint.

5.        This Court has personal jurisdiction over defendant Tamás Modroczky because Mr. Modroczky has sufficient minimum contacts with the State of Utah and because Mr. Modroczky has committed acts which have caused harm directed at the State of Utah.

6.     Venue is proper in this judicial district because the acts, occurrences, and breaches of contract occurred in or were directed at the State of Utah, and because defendant PlayBev CEE submitted to the venue of courts in the State of Utah in Paragraph 12.8 of the Distribution Agreement.

7.     This Court further has jurisdiction under 28 U.S.C. § 1332(a)(2) in that this action is between a Utah Corporation and citizens and subjects of a foreign county and the amount in controversy is in excess of $75,000.

## GENERAL ALLEGATIONS

8.     Playboy Enterprises International, Inc. ("Playboy") is the owner of the right to use certain valuable trademarks, including the right to use the name "Playboy" and the right to use the rabbit head design reproduced below (collectively the "Playboy Trademarks") in many territories worldwide, including, but not limited to, Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland.



9.      In November 2006, Playboy and Play Beverages LLC, a Utah limited liability company, entered into a License Agreement (the "Underlying License") whereby Playboy granted Play Beverages the right to distribute, either directly or through other sub-distributors, non-alcoholic energy drinks bearing the Playboy Trademarks (hereafter the "Products") in many territories, including, but not limited to, Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland.

10.      On August 21, 2007, Play Beverages and plaintiff CirTran entered into an Amended and Restated Exclusive Manufacturing, Marketing and Distribution Agreement whereby CirTran was granted certain manufacturing and distribution rights for the Products under the November 2006 License Agreement.

11.      On July 6, 2009, CirTran and defendant PlayBev CEE entered into the Distribution Agreement (Exhibit A) whereby PlayBev CEE was granted the right to act as the exclusive seller and distributor of the Products in Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Poland, and Bulgaria.

12.      CirTran and defendant PlayBev CEE amended the Distribution Agreement on May 7, 2010 and March 21, 2011.  Pursuant to these amendments, Poland and Bulgaria were removed from the territories covered by the Distribution Agreement, and Austria, Italy, Monaco, and Switzerland were added to the territories covered by the Distribution Agreement.

13.      The Distribution Agreement was in effect during all relevant times until terminated by CirTran as discussed below.

14.     Pursuant to Paragraph 7.2 of the Distribution Agreement PlayBev CEE was required to provide CirTran with monthly sales reports and to pay royalties to CirTran based on PlayBev CEE's monthly sales within 30 days of the end of each calendar month.

15.     On August 2, 2011, CirTran informed PlayBev CEE that PlayBev CEE was required to remit a payment to CirTran of at least $65,313 no later than August 12, 2012. PlayBev CEE failed to make the payment, and as of the date of this Complaint has still not made the payment.

16.     PlayBev CEE's failure to remit this payment constituted a default under Paragraph 4.3(a) of the Distribution Agreement.

17.     Because of PlayBev CEE's default as of August 12, 2011, on August 17, 2011 CirTran sent PlayBev CEE a Notice of Termination.  That Notice of Termination gave PlayBev CEE thirty (30) days to cure its default.

18.     PlayBev CEE has never cured the default for its failure to make the $65,313 payment to CirTran.

19.     Subsequent to the Notice of Termination on August 17, 2011, PlayBev CEE failed to submit sales reports for August and September 2011, and failed to make the required payments to CirTran based on those sales reports.  These failures constitute further defaults by PlayBev CEE under the terms of the Distribution Agreement.

20.     PlayBev CEE has never cured the above-referenced defaults.  Therefore, in accordance with Paragraph 4.3(a) of the Distribution Agreement, CirTran terminated the

Distribution Agreement.   CirTran confirmed the termination of the Distribution Agreement because of PlayBev CEE's numerous defaults on October 27, 2011.

21.    In the letter confirming the termination of the Distribution Agreement, CirTran demanded that PlayBev CEE, in accordance with its obligations under Paragraph 4.7 of the Distribution Agreement (Distributor's Obligations Upon Termination):

a.    Return to CirTran all advertising, promotional and sales materials in PlayBev CEE's possession that were furnished by CirTran, without charge (including without limitation brochures, catalogs, price books, photographs, designs, drawings, and engineering and other data);

b.    Provide to CirTran and Playboy within 10 days of the date of this letter a statement setting forth the number of Products on hand and a listing of all of PlayBev CEE's accounts for the Products;

c.    Immediately cease all use of the Playboy Trademarks, except as permitted during the Sell-off Period under the terms of the Distribution Agreement; and

d.    Cease using the "PlayBev" name and remove it and other trademarks from PlayBev CEE's buildings, signage, vehicles and any of PlayBev CEE's products, letterhead, and business cards.

22.     Defendants PlayBev CEE and Modroczky have refused to comply with the termination of the Distribution Agreement and continue to manufacture and sell the Products in at least some of the markets described above.

23.     On information and belief, on November 10, 2011, defendant Modroczky admitted that the Distribution Agreement had been terminated, but stated that PlayBev CEE was continuing production of the Products at a facility in the Czech Republic and continuing to use the Playboy Trademarks.

24.     Such use of the Playboy Trademarks and the production of the Products is unauthorized and unlawful, and a violation of CirTran's rights under the Distribution Agreement and its rights pursuant to its contract with Play Beverages.

25.     On information and belief, Defendant Modroczky further stated that neither he nor PlayBev CEE would comply with CirTran's demands following termination of the Distribution Agreement and that PlayBev CEE would continue manufacturing and distributing the Products as defendants do not believe CirTran can enforce the termination of the Distribution Agreement.

26.     On information and belief, in early November, defendant Modroczky met with an alleged contact of Playboy to arrange for defendant PlayBev CEE to manufacture and distribute the Products if the Underlying License between Playboy and Play Beverages terminates.

27.     The Distribution Agreement contains a Non-Circumvention Provision in Paragraph 5.18 which provides:

Except with the Company's prior written consent, during the term of this Agreement and for a period ending two years after termination or expiration of this Agreement, Distributor shall not manufacture, market or distribute any non-alcoholic beverages identified by Trademarks (or confusingly similar to the Trademarks) other than the Products manufactured under this Agreement.  By way of clarification, this restriction shall apply even if the Distributor or the seller of such beverages is licensed to use the Trademarks by Playboy or its licensees other than the Company.  Distributor shall cause any sub-distributors to agree to this restriction.

28.     Defendant PlayBev CEE is in violation of this provision by continuing to manufacture and distribute the Products after the termination of the Distribution Agreement and by meeting with an alleged representative of Playboy for the purpose of seeking a direct license with Playboy.

29.     The actions of defendants PlayBev CEE and Modroczky are causing irreparable harm to CirTran by preventing and interfering with: (i) CirTran's right to license alternative distributors of the Products in Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland; (ii) CirTran's exclusive right market the Products in the covered territories; and (iii) CirTran's exclusive right to use of the name "PlayBev" and other valuable CirTran intellectual property.

**FIRST CLAIM**
**BREACH OF CONRACT**
**AGAINST PLAYBEV CEE**

30.     CirTran realleges and incorporates herein by reference Paragraphs 1 through 29 of this Complaint.

31.     The Distribution Agreement was in effect at all times until CirTran terminated the Distribution Agreement because of PlayBev CEE's breaches.  CirTran confirmed the termination of the Distribution Agreement on October 27, 2011.

32.     CirTran has performed all of the material conditions, covenants, obligations, and promises required to be performed by CirTran under the Distribution Agreement, other than terms that PlayBev CEE has waived, excused, or is now stopped to assert, or those terms for which performance by CirTran has been rendered impossible by PlayBev CEE's conduct and breaches.

33.     PlayBev CEE is in material breach of its obligations under the Distribution Agreement.  PlayBev CEE's breaches include:

    a.     Failing to pay CirTran the $65,313 payment that was due no later than August 12, 2011;

    b.     Failing to submit sales reports to CirTran for the months of August and September 2011;

    c.     Failing to pay CirTran the royalties due for sales made in August and September 2011;

    d.     Failing to return to CirTran all advertising, promotional and sales materials in PlayBev CEE's possession (including without limitation brochures, catalogs, price books, photographs, designs, drawings, and engineering and other data) following termination of the Distribution Agreement;

e.     Failing to provide to CirTran and Playboy a statement setting forth the number of the Products PlayBev CEE had on hand and a listing of all of PlayBev CEE's accounts for the Products;

f.     Continuing to use the Playboy Trademarks following termination of the Distribution Agreement;

g.     Continuing to manufacture the Products following termination of the Distribution Agreement;

h.     Continuing to use the "PlayBev" name; and

i.     Meeting with an alleged representative of Playboy for the purpose of obtaining a license to manufacture and distribute the Products.

34.     PlayBev CEE's material breaches of the Distribution Agreement are causing CirTran irreparable harm as PlayBev CEE is interfering with and preventing CirTran from: (i) exercising its right to appoint new distributors of the Products in the territories of Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland; (ii) exercising its exclusive right to market the Products in the covered territories; and (iii) exercising its right to exclusive use of the "PlayBev" name.

35.     PlayBev CEE's material breaches of the Distribution Agreement have also caused CirTran to suffer damages in excess of $75,000 and in an amount to be determined at trial, including, but not limited to, the $65,313 payment due August 12, 2011, the royalty payments due for August and September 2011 sales, and damages for PlayBev CEE's lost

royalties and profits as a result of PlayBev CEE's continuing breach of the Distribution Agreement.

36.     As a result of PlayBev CEE's breach of the Distribution Agreement, CirTran seeks injunctive relief against PlayBev CEE, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with PlayBev CEE as requested below.

37.     As a result of PlayBev CEE's breach of the Distribution Agreement, CirTran also seeks damages in excess of $75,000 and in an amount to be determined at trial.

**SECOND CLAIM**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**
**AGAINST PLAYBEV CEE**

38.     CirTran realleges and incorporates herein by reference Paragraphs 1 through 37 of this Complaint.

39.     The Distribution Agreement is a contract between CirTran and defendant PlayBev CEE, and therefore contains an implied covenant of good faith and fair dealing.

40.     By reason of its conduct, and the conduct of its officers and agents, including Tamás Modroczky, PlayBev CEE has violated the implied covenant of good faith and fair dealing by:

a.     Failing to pay CirTran the $65,313 payment that was due no later than August 12, 2011;

b.     Failing to submit sales reports to CirTran for the months of August and September 2011;

c.   Failing to pay CirTran the royalties due for sales made in August and September 2011;

d.   Failing to return to CirTran all advertising, promotional and sales materials in PlayBev CEE's possession (including without limitation brochures, catalogs, price books, photographs, designs, drawings, and engineering and other data) following termination of the Distribution Agreement;

e.   Failing to provide to CirTran and Playboy a statement setting forth the number of the Products PlayBev CEE had on hand and a listing of all of PlayBev CEE's accounts for the Products;

f.   Continuing to use the Playboy Trademarks following termination of the Distribution Agreement;

g.   Continuing to manufacture the Products following termination of the Distribution Agreement;

h.   Continuing to use the "PlayBev" name; and

i.   Meeting with an alleged representative of Playboy for the purpose of obtaining a license to manufacture and distribute the Products.

41.   PlayBev CEE's breaches of the implied covenant of good faith and fair dealing are causing CirTran irreparable harm as PlayBev CEE is interfering with and preventing CirTran from: (i) exercising its right to appoint new distributors of the Products in the territories of Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania,

Turkey, Austria, Italy, Monaco, and Switzerland; (ii) exercising its exclusive right to market the Products in the covered territories; and (iii) exercising its right to exclusive use of the "PlayBev" name.

42.     PlayBev CEE's breaches of the implied covenant of good faith and fair dealing have also caused CirTran to suffer damages in excess of $75,000 and in an amount to be determined at trial, including, but not limited to, the $65,313 payment due August 12, 2011, the royalty payments due for August and September 2011 sales, and damages for PlayBev CEE's lost royalties and profits as a result of PlayBev CEE's continuing breach of the Distribution Agreement.

43.     As a result of PlayBev CEE's breach of the implied covenant of good faith and fair dealing, CirTran seeks injunctive relief against PlayBev CEE, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with PlayBev CEE as requested below.

44.     As a result of PlayBev CEE's breach of the implied covenant of good faith and fair dealing, CirTran also seeks damages in excess of $75,000 and in an amount to be determined at trial.

**THIRD CLAIM**
**TORTIOUS INTERFERENCE**
**AGAINST PLAYBEV CEE AND TAMÁS MODROCZKY**

45.     CirTran realleges and incorporates herein by reference Paragraphs 1 through 44 of this Complaint.

46.     CirTran had a valid Distribution Agreement with PlayBev CEE until CirTran was forced to terminate the Distribution Agreement because of PlayBev CEE's breaches of the Distribution Agreement.

47.     CirTran has a valid contract with Play Beverages to manufacture and distribute the Products in numerous territories around the world, including the territories of Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland.

48.     CirTran also has valid and beneficial economic interests arising from the Underlying License between Play Beverages and Playboy.

49.     Defendants PlayBev CEE and Modroczky had knowledge of these contracts and the actual and potential economic interests of CirTran in these contracts.

50.     On information and belief, defendants PlayBev CEE and Modroczky have conspired with others to deprive CirTran of the actual and potential economic benefits that it enjoys under and related to these contracts.

51.     On information and belief, defendants PlayBev CEE and Modroczky have conspired with others to deprive CirTran of its manufacturing and distribution rights in the territories of Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland.

52.     On information and belief, Defendants PlayBev CEE and Modroczky have held one or more meetings for the purpose of improperly depriving CirTran of the benefits of its contract with Play Beverages.

53.     These acts of defendants PlayBev CEE and Modroczky constitute interference with and disruption of CirTran's contract with Play Beverages and CirTran's actual and potential economic benefits from the Play Beverages contract and the Underlying License by an improper means and/or with an improper purpose.

54.     Defendants PlayBev CEE and Modroczky's actions have caused and continue to cause CirTran damage and irreparable harm.

55.     As a result of PlayBev CEE's and Modroczky's tortuous interference, CirTran seeks injunctive relief against PlayBev CEE, its officers, agents, servants, employees, and attorneys, Modroczky, and those persons in active concert or participation with PlayBev CEE and Modroczky to prohibit further interference for injury not susceptible to calculation as legal damages.

56.     As a result of PlayBev CEE's and Modroczky's tortuous interference, CirTran also seeks damages in excess of $75,000 and in an amount to be determined at trial, plus its costs incurred because of PlayBev CEE's and Modroczky's tortuous interference.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CirTran Beverage Corp. prays for relief as follows:

A.     For judgment in favor of CirTran and against PlayBev CEE and Modroczky;

B.     For provisional relief in the form of a temporary restraining order and/or preliminary injunction enjoining PlayBev CEE, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with PlayBev CEE from:

1)     using the "PlayBev" name;

2)     manufacturing, distributing, and/or selling the Products in the territories of Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland for two years; and

3)     using advertising, promotional, and sales materials that were furnished by CirTran (including without limitation brochures, catalogs, price books, photographs, designs, drawings, and engineering and other data);

C.     For a permanent injunction enjoining PlayBev CEE, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with PlayBev CEE from:

1)     using the "PlayBev" name;

2)     manufacturing, distributing, and/or selling the Products in the territories of Hungary, the Czech Republic, the Slovak Republic, Slovenia, Croatia, Serbia, Romania, Turkey, Austria, Italy, Monaco, and Switzerland for two years; and

3)       using advertising, promotional, and sales materials that were furnished by CirTran (including without limitation brochures, catalogs, price books, photographs, designs, drawings, and engineering and other data);

D.       For damages in excess of $75,000 and in an amount to be determined at trial for PlayBev CEE's breaches of the Distribution Agreement and the implied covenant of good faith and fair dealing of the Distribution Agreement, including, but not limited to, unpaid royalties, lost profits, and the cost of enforcing the distribution agreement;

E.       For provisional relief in the form of a temporary restraining order and/or preliminary injunction enjoining PlayBev CEE, its officers, agents, servants, employees, and attorneys, Modroczky, and those in active concert or participation with them from continuing to interfere with CirTran's contractual rights and prospective economic advantage;

F.       For a permanent injunction enjoining PlayBev CEE, its officers, agents, servants, employees, and attorneys, Modroczky, and those in active concert or participation with them from continuing to interfere with CirTran's contractual rights and prospective economic advantage;

G.       For damages in excess of $75,000 and in an amount to be determined at trial for PlayBev CEE's and Modroczky's tortuous interference with CirTran's contractual rights and prospective economic advantage;

H.       For costs of suit; and

I.       For such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. Plaintiff CirTran Beverage Corp. hereby demands a trial by jury on all the issues so triable.


DATED this 7th day of December, 2011.

RICHARDS BRANDT MILLER NELSON


_____*/s/ Russell C. Fericks*_____
RUSSELL C. FERICKS
STEVEN H. BERGMAN
*Attorneys for Plaintiff*
*CirTran Beverage Corp.*


Plaintiff's Address:
CirTran Beverage Corp.
4125 South 6000 West
West Valley City, UT 84128


G:\EDSI\DOCS\18941\0012\UE1869.DOCX